ACCEPTED
14-14-00638-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/11/2015 6:42:13 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00638-CR

In the
## Court of Appeals for the Fourteenth District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
9/11/2015 6:42:13 PM
CHRISTOPHER A. PRINE
Clerk

———————◆———————

## No. 1310752
In the 177th District Court
Of Harris County, Texas

———————◆———————

## JAIME ARTURO SANCHEZ
*Appellant*
V.
## THE STATE OF TEXAS
*Appellee*

———————◆———————

## STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**AARON CHAPMAN**
Assistant District Attorney

**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
State Bar No. 24058991

1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
Fax No.:  713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT NOT REQUESTED

# IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

**COUNSEL FOR THE STATE:**

Ms. Devon Anderson — District Attorney

Mr. Aaron Chapman — Assistant District Attorney at trial

Ms. Heather A. Hudson — Assistant District Attorney on appeal

**APPELLANT:**

Jaime Arturo Sanchez

**COUNSEL FOR APPELLANT:**

Mr. Norman Silverman
Mr. Clint Davidson — Counsel at trial

Mr. Mark Thering — Counsel on appeal

**PRESIDING JUDGE:**

Hon. Ryan Patrick

## STATEMENT REGARDING ORAL ARGUMENT

The State believes the briefs in this case adequately apprise this Court of the issues and the law, and any marginal benefit from oral argument does not justify the considerable amount of time that preparation for oral argument requires of the parties and the Court. Therefore, the State does not request oral argument.

## TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES .......................................................................i

STATEMENT REGARDING ORAL ARGUMENT................................................. ii

INDEX OF AUTHORITIES................................................................................... iii

STATEMENT OF THE CASE....................................................................................1

STATEMENT OF FACTS .........................................................................................1

SUMMARY OF THE ARGUMENT ........................................................................5

REPLY TO APPELLANT'S FIRST & THIRD POINTS OF ERROR ....................6

    I.    Standard of review. ...................................................................................6

    II.    Appellant did not have a reasonable expectation of privacy in the premises searched. ................................................................................6

    III.    The warrantless search did not violate the Fourth Amendment because the police obtained a valid consent to search. .............................9

        i.    The police did not unlawfully enter the premises.........................11

        ii.    The record contains clear and convincing evidence that appellant voluntarily consented to the search. ............................12

        iii.    The search did not exceed the scope of appellant's consent. .......14

REPLY TO APPELLANT'S SECOND POINT OF ERROR..................................15

CONCLUSION AND PRAYER ...........................................................................16

CERTIFICATE OF COMPLIANCE ....................................................................17

CERTIFICATE OF SERVICE ............................................................................18

## INDEX OF AUTHORITIES

**CASES**

*Brigham City v. Stuart*,
   547 U.S. 398 (2006) ....................................................................................10

*Emery v. State*,
   881 S.W.2d 702 (Tex. Crim. App. 1994)...................................................16

*Flores v. State*,
   172 S.W.3d 742 (Tex. App.--Houston [14th Dist.] 2005, no pet.) ......12

*Florida v. Jimeno*,
   500 U.S. 248 (1991) ....................................................................................14

*Granados v. State*,
   85 S.W.3d 217 (Tex. Crim. App. 2002)........................................................7

*Kentucky v. King*,
   —U.S.—, 131 S. Ct. 1849 (2011) ..........................................................10

*Kothe v. State*,
   152 S.W.3d 54 (Tex. Crim. App. 2004)........................................................7

*Laney v. State*,
   117 S.W.3d 854 (Tex. Crim. App. 2003)......................................................6

*Maryland v. Macon*,
   472 U.S. 463 (1985) ....................................................................................11

*McGee v. State*,
   105 S.W.3d 609 (Tex. Crim. App. 2003)....................................................10

*Minnesota v. Carter*,
   525 U.S. 83 (1998) ........................................................................................7

*Muniz v. State*,
851 S.W.2d 238 (Tex. Crim. App. 1993)...................................................................16

*New York v. Burger*,
482 U.S. 691 (1987) .....................................................................................................8

*Rakas v. Illinois*,
439 U.S. 128 (1978) .....................................................................................................7

*Reasor v. State*,
12 S.W.3d 813 (Tex. Crim. App. 2000).......................................................... 10, 12

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973) ...................................................................................................10

*Segura v. U.S.*,
468 U.S. 796 (1984) ...................................................................................................11

*Shepherd v. State*,
273 S.W.3d 681 (Tex. Crim. App. 2008)....................................................................6

*Simpson v. State*,
29 S.W.3d 324 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd) .....................14

*State v. Allen*,
53 S.W.3d 731 (Tex. App.--Houston [1st Dist.] 2001, no pet.) ............................7

*State v. Iduarte*,
268 S.W.3d 544 (Tex. Crim. App. 2008)..................................................................16

*Johnson v. State*,
583 S.W.2d 399 (Tex. Crim. App. 1979)....................................................................8

*State v. Ross*,
32 S.W.3d 853 (Tex. Crim. App. 2000)......................................................................9

*State v. Weaver*,
349 S.W.3d 521 (Tex. Crim. App. 2011)..................................................................11

*Velez v. State*,
240 S.W.3d 261 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd).....................15

*Villarreal v. State*,
935 S.W.2d 134 (Tex. Crim. App. 1996).....................................................................7

*Wiede v. State*,
214 S.W.3d 17 (Tex. Crim. App. 2007)......................................................................6

*Williams v. State*,
937 S.W.2d 23 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd) .......................13

iv

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. IV ....................................................................................10

**TO THE HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

Appellant was charged by indictment with the felony offense of possession of marijuana in a usable quantity of more than fifty pounds and less than two thousand pounds. (C.R. 11). The indictment further alleged that appellant had previously been convicted of the felony offense of possession of marijuana. (C.R. 11). After a pre-trial suppression hearing on July 24, 2014, the trial court denied appellant's motion to suppress evidence. (1 R.R. 5, 130). On July 25, 2014, appellant waived his right to a trial by jury and pled guilty to a reduced charge of possession of marijuana in a usable quantity of more than four ounces and less than five pounds in exchange for the State's recommendation that punishment be set at one year of confinement in state jail. (C.R. 63-64). On August 1, 2014, appellant was convicted and sentenced to one year in state jail. (C.R. 73-74). Appellant filed a timely written notice of appeal of the trial court's denial of the motion to suppress. (C.R. 76-77).

**STATEMENT OF FACTS**

On June 22, 2011, narcotics investigators with the Harris County Sheriff's Office received information about a suspicious package at Air Land Express, a freight forwarding company. (1 R.R. 21, 49). They responded to that location and

observed a large wooden crate. (1 R.R. 50). A narcotics dog arrived at the scene and alerted on the crate. (1 R.R. 50-51). The investigators conducted undercover surveillance on the crate, and watched a truck pick up the crate and transport it to an industrial complex located at 10861 Shady Lane. (1 R.R. 9, 21-22, 51-53). Officer John O'Brien testified at a pre-trial suppression hearing that there were three or four warehouses at the location, all of which appeared to be automobile body shops. (1 R.R. 12).

The truck entered one of the warehouses and a forklift was used to unload the wooden crate. (1 R.R. 34-35, 41). The investigators waited for the arrival of marked units en route to the scene before they entered the gate leading into the complex. (1 R.R. 54-55). As they pulled into the parking lot, two men came out of the partially raised warehouse door. (1 R.R. 55). Officer Jonathon Sandel testified that the open warehouse door was approximately ten to fourteen feet wide and fifteen to twenty feet tall. (1 R.R. 58). Through the open door the investigators could see people standing inside the warehouse, as well as a forklift that was being used to remove a wooden crate from a red diesel tank. (1 R.R. 57-58, 97-98). The officers entered the open door with weapons drawn, handcuffed the individuals inside the warehouse, and conducted a pat-down search for weapons. (1 R.R. 55-57).

Officer Patrick McIntyre testified that appellant was in a separate office within the warehouse. (1 R.R. 99-100). Appellant indicated to McIntrye that he was the owner of the business. (1 R.R. 98). McIntyre asked appellant what was in the crate and appellant responded "Man, you already know. It's weed." (1 R.R. 99). McIntyre testified that he did not have a gun pointed at appellant, but he could not recall whether appellant was handcuffed. (1 R.R. 99, 101).

Appellant gave written consent to a search of the crate. (1 R.R. 100). The consent form reflects that appellant consented to a search of the "Cruz Body Shop" located at 2765 Trenton. (2 R.R. SX 8). However, the place actually searched was a warehouse connected to the body shop. (1 R.R. 13, 45, 67). The correct address for the warehouse is 10861 Shady Lane. (1 R.R. 53, 67-68).

Officer McIntyre also obtained oral consent from appellant to search the warehouse and the diesel tank. (100, 103). Appellant directed one of the workers in the warehouse to open the metal container with a welding torch. (1 R.R. 66, 103-04). The police recovered bundles of marijuana from inside the diesel tank. (1 R.R. 39).

The trial court denied appellant's pre-trial motion to suppress evidence and made the following findings of fact and conclusions of law: (1) the officers' testimony was credible; (2) the officers had probable cause; (3) the premises were open to the public; (4) appellant voluntarily gave a written consent to search; (5)

3

the address listed on the consent form could describe the warehouse searched; and (6) appellant orally consented to a search of the container. (1 R.R. 130-31). The trial court subsequently permitted the defense to reopen the suppression hearing and present additional evidence. (1 R.R. 134-35). Appellant testified on direct examination that his business is closed to the public. (1 R.R. 137). On cross-examination, appellant stated that he is not the owner of the property, he does not lease the property, and he has no privacy interest in the warehouse. (1 R.R. 144, 146-47). Appellant gave conflicting testimony on re-direct examination that the warehouse belongs to him and he has the right to exclude people from entering. (1 R.R. 149). In light of appellant's testimony, the trial court made an additional finding that appellant did not have standing to contest the validity of the search. (1 R.R. 151-52).

## SUMMARY OF THE ARGUMENT

***Point of Error One:*** Appellant does not have standing to contest the legality of the search under the Fourth Amendment to the United States Constitution because he did not have a legitimate expectation of privacy in a commercial warehouse that was open to the public. Appellant also testified that he did not own or lease the warehouse, and he lacked any privacy interest in the warehouse. Moreover, the warrantless search did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures because the police obtained a valid consent to search.

***Point of Error Two:*** Appellant has not preserved a separate claim that the evidence should have been suppressed under state constitutional and statutory provisions because he has not presented argument or authority demonstrating how state law affords greater protection than the Fourth Amendment.

**<u>REPLY TO APPELLANT'S FIRST & THIRD POINTS OF ERROR</u>**

In his first and third points of error, appellant contends that the search of his place of business violates the Fourth Amendment's prohibition against unreasonable searches and seizures because the police failed to procure a warrant and there were no exigent circumstances justifying the search.

## I.    *Standard of review.*

A trial court's denial of a motion to suppress evidence is reviewed for an abuse of discretion.  *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  The reviewing court "give[s] almost total deference to a trial court's express or implied determination of historical facts and review[s] de novo the court's application of the law of search and seizure to those facts."  *Id*.  The evidence is viewed in the light most favorable to the trial court's ruling.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  The trial court's ruling will be upheld if it is reasonably supported by the record and correct on any theory of law applicable to the case.  *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## II.    *Appellant did not have a reasonable expectation of privacy in the premises searched.*

A threshold issue exists as to whether appellant has standing to contest the legality of the search.  To challenge a search under the Fourth Amendment, an individual must have a legitimate expectation of privacy in the place searched.  *See*

6

*Granados v. State*, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). The burden rests upon the accused to prove facts which establish an objectively reasonable expectation of privacy. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In determining whether an accused's expectation of privacy is reasonable, the following non-exhaustive factors are considered: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.2d at 223. The issue of standing is a question of law which is reviewed *de novo*. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

The record reflects that the warehouse was used as a place of business rather than a private residence. Appellant testified that the purpose of the warehouse was to operate a business selling barbecue pits. (1 R.R. 142). According to appellant, the business had recently begun making sales by word-of-mouth. (1 R.R. 138-39). The expectation of privacy in commercial property is less than the expectation of privacy in a residence. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (citing

7

*New York v. Burger*, 482 U.S. 691, 700 (1987)).  Any claimed expectation of privacy appellant had in the warehouse is therefore necessarily diminished.

In *Johnson v. State*, 583 S.W.2d 399 (Tex. Crim. App. 1979), the defendant challenged the legality of a search of a warehouse leased by his father.  The Court of Criminal Appeals held that the defendant's status as an employee with access to the building did not create a possessory interest in the warehouse.  *Id*. at 404.  Moreover, the fact that multiple employees had access to the warehouse negated the defendant's argument that he had a reasonable expectation of privacy in the building.  *Id*.

In this case, multiple employees were present at the warehouse when the police arrived.[1]  (1 R.R. 98).  In addition, the warehouse door was open and the officers could see the wooden crate in plain sight.  (1 R.R. 57-58).  There was no evidence that "no trespassing" signs had been posted outside the warehouse, and the surrounding businesses were all open to the public.  (1 R.R. 68, 106).  Accordingly, the record supports the trial court's conclusion that appellant did not have a legitimate expectation of privacy in the warehouse.

---

[1] It is unclear from appellant's testimony whether he was present at the warehouse as an employee.  Initially, appellant testified that he and "the other guys" were at the warehouse because they had been "brought in to cut some parts up[.]"  (1 R.R. 143).  However, appellant subsequently testified that he was not working there.  (1 R.R. 146).

8

Furthermore, appellant explicitly testified that he had no possessory interest in the warehouse. Appellant claimed that he had not purchased or leased the property. (1 R.R. 143, 146-47). Appellant further stated that he does not store anything in the warehouse, and he has no privacy interest in the property. (1 R.R. 144). Appellant testified that when the police asked for his consent to search the warehouse, he said "no, it's not my property. It's not my business. You know, I don't have no say-so here." (1 R.R. 144).

On re-direct examination, defense counsel elicited conflicting testimony from appellant that it was his barbecue operation, that the warehouse was his space, and that he had the right to exclude people from the warehouse. (1 R.R. 149). As the trier of fact, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). As such, the trial court could choose to disbelieve any part of appellant testimony, including his conflicting testimony that he had a possessory interest in the warehouse. *See id*. Accordingly, the trial court did not abuse its discretion in concluding that appellant lacked standing to challenge the legality of the search.

III. *The warrantless search did not violate the Fourth Amendment because the police obtained a valid consent to search.*

Even if appellant had a legitimate expectation of privacy in the warehouse, the officers' search of the premises did not violate the Fourth Amendment. The

Fourth Amendment to the United States Constitution affords individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. A search and seizure without a warrant is considered presumptively unreasonable. *Kentucky v. King*, —U.S.—, 131 S. Ct. 1849, 1856 (2011) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). However, the warrant requirement is subject to certain exceptions, such as "voluntary consent to search, search under exigent circumstances, and search incident to arrest." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Consent to search must be obtained voluntarily to constitute a valid exception to the warrant requirement. *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973)). The State must prove the voluntariness of the consent by clear and convincing evidence. *Id*. at 818.

Appellant asserts that the officers' initial entry onto the premises without a warrant constitutes an illegal entry; therefore, the evidence discovered during the subsequent search of the warehouse should have been suppressed as fruit of the poisonous tree. *See* (Appellant's Brief pp. 20-22). Appellant further contends that his consent to search was obtained involuntarily because the police escorted him from his office at gunpoint and ordered him to sign a written consent form. *See id*.

10

p. 26. Finally, appellant argues that the search exceeded the scope of the written consent, which only authorized a search of the Cruz Body Shop located at 2765 Trenton. *Id*. pp. 26-28.

> i. *The police did not unlawfully enter the premises.*

Under the federal exclusionary rule, evidence obtained as the result of an illegal search or seizure must be suppressed. *See Segura v. U.S.*, 468 U.S. 796, 804 (1984). Appellant alleges that the marijuana seized by the police should have been suppressed because it was discovered after the police illegally entered the warehouse without a warrant.

As noted *supra*, business and commercial premises are less private than residential premises. *See State v. Weaver*, 349 S.W.3d 521, 527 (Tex. Crim. App. 2011). "Police, although motivated by an investigative purpose, are as free as the general public to enter premises 'open to the public,' when they are open to the public." *Id*. (quoting *Maryland v. Macon*, 472 U.S. 463, 470 (1985)).

The trial court found that the warehouse was a public area based on the officers' testimony and the photographs of the building. (1 R.R. 131). The police did not recall seeing any posted "no trespassing" signs. (1 R.R. 68). The record also reflects that the warehouse door was open, there were people "milling about" the warehouse when the police arrived, and all of the surrounding businesses were open to the public. (1 R.R. 57, 68, 85-86). In addition, appellant testified that the

11

public was free to enter the warehouse to purchase barbecue pits. (1 R.R. 139-40). Considering that the warehouse was open to the public, the officers' initial entry onto the premises was not unlawful.

> ii. *The record contains clear and convincing evidence that appellant voluntarily consented to the search.*

The police also obtained a valid consent to search. In determining whether consent was obtained voluntarily, courts assess the totality of the surrounding circumstances. *Reasor*, 12 S.W.3d at 818. Some of the factors considered include: whether the person was in custody, whether the person was arrested at gunpoint, whether the person had the option of refusing consent, the constitutional advice given to the accused, the length of detention, the repetitiveness of the questioning, and the use of physical punishment. *See Flores v. State*, 172 S.W.3d 742, 749 (Tex. App.--Houston [14th Dist.] 2005, no pet.).

In the instant case, there is nothing in the record to indicate that appellant was in custody at the time consent was obtained. When the police entered the warehouse, they conducted a protective sweep with their weapons drawn and patted down the occupants. (1 R.R. 55-57). However, the officers' testimony suggests that appellant was in a separate office during the protective sweep of the warehouse. (1 R.R. 26, 58, 99-100). The officers were unable to recall whether or not appellant was handcuffed prior to giving consent to search, but they testified that appellant was not held at gunpoint. (1 R.R. 31, 99, 101). When Officer

12

McIntyre asked appellant what was inside the crate, appellant volunteered incriminating information about the contents of the container. (1 R.R. 99). Appellant also orally agreed to allow the police to search the container and signed a written consent form. (1 R.R. 35-37; 2 R.R. DX 8). The written consent form reflects that appellant was advised of his constitutional right to refuse consent. *See* (2 R.R. DX 8). The fact that appellant was warned of his right to refuse consent is some indication that his consent was voluntary. *See Williams v. State*, 937 S.W.2d 23, 29 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd). The written consent form also explicitly states "This consent is being given to the above Peace Officers freely and voluntarily and without threats or promises of any kind and is given with my full and free consent." (2 R.R. DX 8).

Additionally, appellant never withdrew his consent. (1 R.R. 38). To the contrary, appellant facilitated the search by instructing one of the workers at the warehouse to use a welding torch to open the diesel tank. (1 R.R. 66). Notably, appellant did not testify that the police coerced him in any way to give consent to the search. Considering the totality of these circumstances, there is clear and convincing evidence that appellant voluntarily consented to a search of the premises.

### iii.    *The search did not exceed the scope of appellant's consent.*

Furthermore, the police did not exceed the scope of the consent to search. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness, i.e., what the typical reasonable person would have understood by the exchange between the officer and the suspect." *Simpson v. State*, 29 S.W.3d 324, 330 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  The scope of a search is typically defined by its expressed object, and a suspect may limit the scope of the search.  *Id*.

In this case, the scope of the written consent to search was defined as the "Cruz Body Shop" located at 2765 Trenton.  (2 R.R. DX 8).  The record reflects that the warehouse searched was not the Cruz Body Shop.  (1 R.R. 13).  However, the record supports the trial court's finding that the location listed in the written consent form could describe the area searched.  (1 R.R. 131).  As noted by the trial court, all of the warehouses located within the industrial complex located at the corner of Trenton Road and Shady Lane appear to share a common parking lot.  (1 R.R. 130; 2 R.R. SX 4).  Officer Sandel testified that the warehouse searched was connected to a body shop.  (1 R.R. 67).  In addition, appellant informed the police that the warehouse was "with the body shop kind of."  (1 R.R. 82-83).

Moreover, a valid consent to search may be oral. *Velez v. State*, 240 S.W.3d 261, 266 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd). Here, the police specifically asked appellant for permission to search the warehouse and the crate. (1 R.R. 37, 103). Appellant orally granted the police permission to search those areas, and directed one of the workers to open the diesel tank with a welding torch. (1 R.R. 103-04). Appellant observed the search and never withdrew his consent. Based on this exchange, a reasonable person would have understood that the police intended to search the warehouse and the metal container, rather than the adjoining body shop. Accordingly, the search did not exceed the scope of appellant's consent because the expressed object of the oral consent included the warehouse and the diesel tank. *See Velez*, 240 S.W.3d at 266 (holding that a written consent form limiting the scope of the search to the defendant's address did not expressly constrain the defendant's oral consent to search vehicles on the premises). As such, the search was conducted pursuant to a valid consent to search, and appellant's first and third points of error should be overruled.

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

Appellant further argues that the evidence should have been suppressed pursuant to Article I, section 9, of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure. *See* (Appellant's Brief pp. 23-24). Appellant's argument consists of a single paragraph citing *State v. Iduarte*, 268 S.W.3d 544

(Tex. Crim. App. 2008) for the proposition that evidence obtained as a direct or indirect result of an illegal search or seizure should be excluded. Appellant does not present argument or authority showing that state constitutional and statutory provisions afford greater protection than the Fourth Amendment to the United States Constitution.[2] Accordingly, this point of error has not been preserved for appellate review. *See Emery v. State*, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994) (holding that the defendant did not preserve an additional claim that his right to a speedy trial under Article I, section 10 of the Texas Constitution was violated because he failed to show that the Texas Constitution provided more protection than the federal constitution); *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993) (refusing to address the defendant's state constitutional claims where the defendant failed to offer argument or authority differentiating the protection provided by the Texas Constitution from the protection provided by the United States Constitution).

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the judgment of conviction should be affirmed.

---

[2] Appellant also failed to invoke state constitutional or statutory grounds at the suppression hearing. Additionally, the record reflects that the trial court's ruling only pertained to appellant's claim that the search violated the Fourth Amendment. *See* (1 R.R. 132-33).

16

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991
hudson_heather@dao.hctx.net
curry_alan@dao.hctx.net


## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 3,635 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991

17

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been submitted for service by e-filing to the following address:

Mark Thering
1305 Prairie, Ste. 300
Houston, Texas 77002
Tel: (713) 224-7996
Fax: (713) 237-9217
lawring@yahoo.com

/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991

Date: 9/11/2015

18